IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael E. Keeling, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Mr. Fagan and Mrs. Newberry, | : | |
| both Grievance Coordinator's for | : | |
| Department of Corrections, | : | No. 166 M.D. 2021 |
| Respondents | : | Submitted: March 11, 2022 |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                    FILED:  July 7, 2022

Before this Court are State Correctional Institution (SCI) at Dallas Grievance Coordinator K. Fagan's (Fagan)[1] and SCI-Frackville Grievance Coordinator J. Newberry's (Newberry)[2] preliminary objections (Preliminary Objections), made by and through the Department of Corrections (collectively, DOC), to Michael E. Keeling's (Keeling) pro se petition for review in the nature of a complaint in mandamus (Petition) filed in this Court's original jurisdiction. After review, this Court sustains DOC's first Preliminary Objection and dismisses the Petition.

---

[1] Fagan's first name does not appear in the Petition or appended documents.

[2] Newberry's first name does not appear in the Petition or appended documents.

## Background[3]

Keeling is an inmate at SCI-Frackville. At some point while he was previously an inmate at SCI-Dallas, Keeling filed Grievance No. 889772, wherein he asserted that SCI-Dallas staff (the librarian and/or security) confiscated and misplaced his Venda card[4] in the SCI-Dallas law library. *See* Petition Ex. B. Although Keeling and SCI-Dallas disagreed about how much money was on the Venda card when it was misplaced, Keeling claimed that to resolve the matter Lieutenant Tev[5] at SCI-Dallas verbally agreed to place $15.00 on a new Venda card for him. *See id.*; *see also* Petition Ex. G. On October 4, 2020, Keeling filed an Inmate's Request to Staff Member (Inmate Request) with Fagan seeking an accounting because when he attempted to retrieve the new Venda card from the law librarian on October 2, 2020, it reflected only a $10.00 balance.[6] *See* Petition Ex. B at 2. Keeling submitted similar Inmate Requests on October 24 and October 25, 2020. *See* Petition Ex. B at 1.

On October 26, 2020, Keeling filed a grievance[7] (Venda Card Grievance), wherein he claimed that Fagan failed to respond to his Inmate Requests, and reiterated his request for information about why his Venda card balance was

---

[3] The following facts are as alleged in the Petition and appended documents.

[4] The record does not reflect the Venda card's function.

[5] In his answer to DOC's Preliminary Objections, Keeling clarified that Lieutenant Travis made the verbal agreement. *See* Keeling Answer to Prelim. Objs. ¶ 15. Notwithstanding, neither Lieutenant Tev's nor Lieutenant Travis's full name(s) appear in the Petition or appended documents.

[6] Section 1.A.3 of DC-ADM 804 (Inmate Grievance System) states, in relevant part: "An inmate is encouraged to attempt resolution of a concern informally by use of a DC-135A, Inmate[']s Request to Staff Member or direct conversation with the Unit Manager or Officer-in-Charge prior to submitting a DC-804, Part 1, Official Inmate Grievance Form . . . ." www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf (DC-ADM 804) at 1-1 (last visited July 6, 2022). *See Figuera v. Pa. Bd. of Prob. & Parole*, 900 A.2d 949 (Pa. Cmwlth. 2006) (taking judicial notice of information found on DOC's website).

[7] The October 26, 2020 grievance does not specify a grievance number. *See* Petition Ex. B at 1.

only $10.00.  *See* Petition Ex. B at 1.  On October 30, 2020, DOC transferred Keeling from SCI-Dallas to SCI-Frackville.  *See* Petition at 2.

On November 12, 2020, Keeling filed Grievance No. 898908 (Health Grievance) with Newberry, *see* Petition at 1.  Therein, he alleged that SCI-Dallas had maliciously and in retaliation for the filing of his legal claims[8] transferred him to SCI-Frackville on October 30, 2020, during the COVID-19 pandemic, without appropriate pre-screening, despite that he is at high risk because of his age (60 years old) and because he is a diabetic, overweight, and an African-American male with high blood pressure.  *See* Petition Ex. A at 1.

On November 13, 2020, Newberry rejected Keeling's Health Grievance for failure to comply with the provisions of DC-ADM 804 (Inmate Grievance System); in particular, because it "involve[d] matter(s) that occurred at another facility and should be directed by [Keeling] to the appropriate facility."[9]  Petition Ex. C at 1; *see also* Petition at 1.  Newberry's rejection form provided the SCI-Dallas address to which Keeling should send the Health Grievance.  *See* Petition Ex. C.  Thereafter, Keeling mailed the Health Grievance to SCI-Dallas Facility Grievance Coordinator Fagan.  *See* Petition Ex. D.

On November 25, 2020,[10] Fagan rejected and returned the Health Grievance to Keeling under new SCI-Dallas Grievance No. 900870, declaring:

---

[8] Keeling explained that, on October 25, 2020, he sent a letter to DOC's counsel seeking to stop retaliatory behavior purportedly stemming from pending prison litigation cases against SCI-Dallas: *Keeling v. Richards*, No. 11895-2014, and *Keeling v. Wetzel*, 18-CV-2195.  *See* Petition Ex. A at 1-2.

[9] Section 1.A.9 of DC-ADM 804 specifies: "A grievance must be filed with the Facility Grievance Coordinator/designee at the facility where the grievance event occurred."  DC-ADM 804 at 1-2.

[10] On November 23, 2020, Fagan notified Keeling that he required a 10-day extension of time to respond to Grievance No. 897103.  *See* Petition Ex. J.  However, Keeling was unfamiliar with the action to which Fagan was referring because the grievance number did not match his Health Grievance or his Venda Card Grievance.  *See* Petition at 3.

3

"[G]rievance [No. 900870] was rejected under [G]rievance [No.] 898908 and you are not claiming to resubmit [G]rievance [No. 898908] with the proper institution." Petition Ex. E at 1.

On December 12, 2020, Keeling sent a letter to Fagan requesting the status of his Venda Card Grievance. *See* Petition Ex. G.

On December 23, 2020, Keeling mailed the Health Grievance to SCI-Dallas marked "RE[]SUBMISSION," Petition Ex. D. Therein, Keeling reasserted his claim that his retaliatory transfer from SCI-Dallas to SCI-Frackville without proper screening in light of the COVID-19 pandemic placed his health at risk. *See* Petition at 1-2.

On January 17 and 20, 2021, Keeling sent requests to DOC's "Bureau of Standards and Practices" regarding whether his Health Grievance and Venda Card Grievance (collectively, Grievances) were being addressed in accordance with DOC's standards and practices. *See* Petition Ex. H. By January 29, 2021 letter, DOC's Bureau of Standards, Audits, Assessment, and Compliance (Bureau) Coordinator David Radziewicz informed Keeling that the Bureau lacked authority over DOC's inmate grievance process and could not interpret DOC policy, and further recommended that Keeling exercise his appeal rights under DC-ADM 804. *See id.*; *see also* Petition at 3.

On March 11, 2021, by a document labeled *Notice of Intent to File Mandamus* directed "To[] [Whom] This May Concern," Keeling announced that since he had not received a response to his Venda Card Grievance, he intended to file a mandamus action in this Court, unless the matter could be resolved. *See* Petition Ex. I. Keeling also declared that Fagan had yet to respond to the Health Grievance. *See id.*

4

On May 18, 2021, Keeling filed the Petition,[11] asserting that Fagan "refus[ed] to process [his] [Health G]rievance in order to protect SCI-Dallas and [DOC] . . . [,]" Petition at 2, and Fagan "completely/intentionally ignore[d]" Keeling's Venda Card Grievance. *Id.* at 3. Keeling requested this Court to compel Fagan/DOC to resolve the Grievances. *Id.*

On September 28, 2021, DOC filed Preliminary Objections arguing that Keeling failed to state a cause of action upon which he is entitled to relief (i.e., demurrer), where Fagan rejected Keeling's Grievances and: (1) Keeling failed to comply with DC-ADM 804; (2) Newberry and Fagan lacked personal involvement; (3) DOC policies do not create actionable rights this Court can enforce; and (4) Keeling failed to exhaust administrative remedies pursuant to what is referred to as the Pennsylvania Prison Litigation Reform Act. *See* DOC Prelim. Objs. at 3-12. DOC filed a brief in support of its Preliminary Objections.

On October 26, 2021,[12] Keeling filed an answer to DOC's Preliminary Objections, asserting therein that this Court should overrule them because he complied with DC-ADM 804 and attempted to exhaust his administrative remedies, but Fagan created false reasons to tactically and intentionally reject and/or ignore his Grievances. *See* Keeling Answer to Prelim. Objs. Keeling filed a brief in opposition to DOC's Preliminary Objections.

---

[11] Keeling also filed an application to proceed *in forma pauperis*, which this Court granted on June 10, 2021. On August 3, 2021, DOC filed a motion seeking to have this Court revoke Keeling's *in forma pauperis* status (Motion) and direct him to pay the filing fee because Keeling was an abusive litigator under the Prison Litigation Reform Act, 42 Pa.C.S. §§ 6601-6608. In response to the Motion, Keeling paid the full filing fee. On September 2, 2021, this Court dismissed the Motion as moot and directed DOC to file an answer or otherwise plead to the Petition.

[12] Also on December 21, 2021, Keeling filed a document he titled *Judicial Notice*, wherein he informed this Court of an inmate mail delay that resulted in him receiving DOC's Preliminary Objections on October 14, 2021. *See* Keeling Judicial Notice.

**Discussion**

The law is well settled:

> In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review [in the nature of a complaint], as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.
>
> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the [petition for review in the nature of a] complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the [petition for review in the nature of a] complaint.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted). "[D]ocuments attached as exhibits, documents referenced in the [petition for review], as well as facts already of record may also be considered."[13] *Fraternal Ord. of Police Lodge No. 5, by McNesby v. City of Phila.*, 267 A.3d 531, 542 (Pa. Cmwlth. 2021).

DOC's overarching objection is that Keeling has failed to state a claim upon which mandamus relief can be granted.

> The common law writ of mandamus lies to compel an official's performance of a ministerial act or a

---

[13] In his answer to DOC's Preliminary Objections, Keeling pled additional facts and attached additional documents relating to the underlying grievance regarding the circumstances surrounding his underlying alleged Venda card confiscation for this Court's consideration. *See* Keeling Answer to Prelim. Objs. at 3-4, Ex. K. This Court may not consider additional facts and documents not included in the Petition. *See Torres*.

6

mandatory duty. *McGill v. P[a.] Dep[']t of Health, Off[.] of Drug [&] Alcohol Programs*, 758 A.2d 268, 270 (Pa. Cmwlth. 2000). 'The burden of proof falls upon the party seeking this extraordinary remedy to establish his legal right to such relief.' *Werner v. Zazyczny*, . . . 681 A.2d 1331, 1335 ([Pa.] 1996). **Mandamus requires '[1] a clear legal right in the [petitioner], [2] a corresponding duty in the [respondent], and [3] a lack of any other adequate and appropriate remedy** at law.' *Crozer Chester Med[.] C[tr.] v. . . . Bureau of Workers' Comp[.], Health Care Serv[s.] Rev[.] Div[.], . . .* 22 A.3d 189, 193 ([Pa.] 2011) (citations omitted). Mandamus is not available to establish legal rights but only to enforce rights that have been established.

*Sinkiewicz v. Susquehanna Cnty. Bd. of Comm'rs*, 131 A.3d 541, 546 (Pa. Cmwlth. 2015). "**Mandamus is not used to direct the exercise of judgment or discretion of an official in a particular way**." *Clark v. Beard*, 918 A.2d 155, 159 (Pa. Cmwlth. 2007) (emphasis added). Further, "[i]n the context of a discretionary act, a [C]ourt can issue such a writ to mandate the exercise of [its] discretion in some fashion, but not to require that it be exercised in a particular manner." *Sever v. Dep't of Env['t] Res.*, . . . 514 A.2d 656, 660 ([Pa. Cmwlth.] 1986) (quoting *U.S. Steel Corp. v. Papadakos*, . . . 437 A.2d 1044, 1046 ([Pa. Cmwlth.] 1981)).

*Stodghill v. Pa. Dep't of Corr.*, 150 A.3d 547, 552 (Pa. Cmwlth. 2016), *aff'd*, 77 A.3d 182 (Pa. 2018) (emphasis added).

**First Preliminary Objection - Failure to Comply with DC-ADM 804**

DOC specifically objects to Keeling's Petition on the basis that Keeling failed to comply with DC-ADM 804. *See* DOC Prelim. Objs. at 5-6. In particular, DOC argues that, notwithstanding Keeling's claims that Newberry and Fagan improperly rejected the Health Grievance or, alternatively, failed to respond to his Grievances, Keeling is not entitled to mandamus relief because Newberry and Fagan

properly rejected the Grievances pursuant to DC-ADM 804 and Keeling's failure to follow that policy. DOC avers:

> 30. [Rather than resubmitting the Health Grievance to SCI-Dallas], [Keeling] submitted a brand new grievance to [SCI-Dallas]. That [Health G]rievance was also rejected due to [Keeling's] failure to re[]submit his original [Health G]rievance as he was instructed. *See* [Petition] Exs. D[,] E.

> 31. Accordingly, to the extent [Keeling] claims [Fagan] improperly rejected [the Health Grievance] in contravention of [DOC] policies, he is incorrect and any such claim should be dismissed with prejudice.

DOC Prelim. Objs. at 6. Importantly, DOC did not address Fagan's alleged failure to respond to the Venda Card Grievance.

Section 93.9 of DOC's Regulations, 37 Pa. Code § 93.9, broadly describes its inmate grievance procedure. This Court has held that "[t]he primary purpose and benefit of the grievance procedure is to allow [DOC] 'to address complaints about the program it administers before being subjected to suit.'" *Shore v. Pa. Dep't of Corr.*, 168 A.3d 374, 383 (Pa. Cmwlth. 2017) (quoting *Jones v. Bock*, 549 U.S. 199 (2007) (citation omitted)). To that end, Section 1.A.13 of DC-ADM 804 provides that "[a]n inmate who has been personally affected by a [DOC] and/or facility action or policy will be permitted to submit a grievance." DC-ADM 804 at 1-3. Inmates must submit grievances to the Facility Grievance Coordinator/designee at the SCI "where the grievance event occurred," DC-ADM 804 at 1-2, "within 15 working days after the event upon which the claim is based."[14] *Id*. Sections 1.B and 1.C of DC-ADM 804 specify that, upon receipt of an inmate grievance, the SCI's Facility Grievance Coordinator/designee shall assign a grievance tracking number,

---

[14] Section 1.C.2 of DC-ADM 804 authorizes the Facility Grievance Coordinator/designee to grant reasonable filing extensions on a case-by-case basis, particularly when an inmate has been transferred from the SCI where the grievance should have been filed. *See* DC-ADM 804 at 1-6.

8

enter it into the Automated Inmate Grievance Tracking System, and either reject the claim as improperly submitted or designate a grievance officer to investigate it.[15] *See* DC-ADM 804 at 1-5 - 1-7. Pursuant to Section 1.C.5.g of DC-ADM 804, a "response shall be provided to the inmate within 15 working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System[.]"[16] DC-ADM 804 at 1-8.

Based on this Court's review of the Petition and the attached documents, Keeling timely filed the November 12, 2020 Health Grievance within 15 days of the October 30, 2020 transfer that was the subject thereof, albeit to the wrong SCI. It is also evident that Keeling followed Newberry's November 13, 2020 instruction and sent the Health Grievance to SCI-Dallas between November 13 and November 25, 2020. It is not clear whether Keeling forwarded the original Health Grievance No. 898908 to SCI-Dallas, whether he forwarded Health Grievance No. 898908 marked "RE[]SUBMISSION" to SCI-Dallas, or whether Keeling sent a new Health Grievance to SCI-Dallas.[17] Petition Ex. D at 1. Notwithstanding, in response to Fagan's November 25, 2020 rejection, Keeling resubmitted the Health Grievance

---

[15] Section 1.A.20 of DC-ADM 804 states: "If a grievance is rejected, the grievance may be re[]submitted, using the same grievance number, within five working days of the rejection notice date. A rejected grievance may only be re[]submitted one time." DC-ADM 804 at 1-4.

[16] Section 1.C.5.h of DC-ADM 804 provides that "an extension of [10] additional working days may be requested from the Facility Grievance Coordinator/designee if the investigation of the grievance is ongoing." DC-ADM 804 at 1-7.

[17] DOC asserts in its Preliminary Objections that Keeling filed a new Health Grievance at SCI-Dallas in November 2020, rather than submit his original Health Grievance as Newberry instructed. *See* DOC Prelim. Objs. at 3 n.1 However, that fact is not clear on the face of the Petition or its attachments. "[I]t is axiomatic that 'a demurrer cannot aver the existence of facts not apparent from the face of the challenged pleading.'" *Drack v. Tanner*, 172 A.3d 114, 120 (Pa. Cmwlth. 2017) (quoting *Martin v. Dep't of Transp.*, 556 A.2d 969, 971 (Pa. Cmwlth. 1989)). Because the purported fact that Keeling filed a new Health Grievance rather than the original Health Grievance is not evident from the Petition or its exhibits, it is an impermissible speaking demurrer, and this Court may not consider it in deciding DOC's Preliminary Objections.

to Fagan and, having corrected the error as instructed, Keeling anticipated that Fagan would substantively review the Health Grievance. Petition Ex. D at 1.

In his brief opposing DOC's Preliminary Objections, Keeling "concede[s] [] Newberry . . . was correct in her rejection . . ." and "[w]here the error . . . occurred was [*Fagan's*] '[m]isprepresentation' of facts . . . ." Keeling Br. at 1 (emphasis added). Thus, Keeling has withdrawn his allegations against Newberry, and this Court's review is limited to Keeling's claims against Fagan for allegedly mishandling or failing to process the Grievances.

Relative to the Health Grievance, Keeling contends that Fagan misused the grievance rejection platform to ignore his complaint. The circumstances Keeling pled in the Petition, together with the language in Fagan's rejection and DC-ADM 804's instructions, appear to support Keeling's position. Fagan's November 25, 2020 rejection of Keeling's Health Grievance was less than clear, not only because Fagan's rationale for its rejection clearly *did not apply* to the Health Grievance,[18] but also because it led Keeling to reasonably believe that he merely had to resend the Health Grievance marked *resubmitted* in order for Fagan to investigate the underlying claim, which Keeling subsequently did. Fagan did not respond.[19]

---

[18] Fagan's stated "[r]ationale" for rejecting the Health Grievance was that "[g]roup grievances or grievances filed on behalf of another inmate are prohibited." Petition Ex. E at 1. However, Keeling filed the Health Grievance on his own behalf, and not on behalf of anyone else.

[19] Section 1.A.15 of DC-ADM 804 declares:

> Any grievance issue that has been or is currently being addressed will not be re[]addressed in a subsequent grievance. Any concern disputing previous grievances, initial review responses, appeal decisions, or actions of staff members who rendered those decisions should be addressed through the appeal process outlined in Section 2 of this procedures manual.

DC-ADM 804 at 1-3 (emphasis omitted). Fagan could have more clearly denied Keeling's Health Grievance on this basis, but he did not.

Keeling also argues that Fagan completely and intentionally ignored the Venda Card Grievance. Keeling filed the Venda Card Grievance with Fagan at SCI-Dallas on October 26, 2020, four days before his transfer to SCI-Frackville, but he did not receive a grievance number prior to his transfer. *See* Petition at 3. Keeling recognized that, on November 23, 2020, Fagan requested a 10-day extension to review Grievance No. 897103, *see* Petition at 3; *see also* Petition Ex. J, but Keeling was unclear about the subject of Grievance No. 897103. *See* Petition at 3. Keeling observes that, even if Grievance No. 897103 is his Venda Card Grievance, Fagan had yet to respond, despite the extension and Keeling's December 13, 2020 correspondence to Fagan seeking an update.[20] *See* Keeling Br. in Opp'n at 4; *see also* Petition Ex. G.

Keeling did not file his Venda Card Grievance within 15 days of learning on October 2, 2020, that his Venda card balance was only $10.00. Rather, Keeling filed Inmate Requests on October 4, October 24, and October 25, 2020, in an effort to resolve the matter, as Section 1.A.3 of DC-ADM 804 encourages inmates to do. *See* DC-ADM 804 at 1-1. Keeling did file the Venda Card Grievance within 15 days after he filed his final Inmate Request on October 25, 2020. Fagan could have rejected the Venda Card Grievance as untimely filed, or for another reason. Instead, Fagan never responded.

However,

> allegations that [DOC] failed to follow its regulations or internal policies cannot support a claim based upon a vested right or duty because these administrative rules and regulations, unlike statutory provisions, usually do not create rights in prison inmates. *Tindell v. Dep[']t of*

---

[20] Because it is unclear to whom Keeling sent the March 11, 2021 letter seeking an update regarding the Grievances and warning of his intention to file the Petition, *see* Petition Ex. I, this Court will not rely upon it in deciding the Preliminary Objections.

*Corr*[.], 87 A.3d 1029, 1035 (Pa. Cmwlth. 2014); *Bullock v. Horn*, 720 A.2d 1079, 1082 n.6 (Pa. Cmwlth. 1998).

*Shore*, 168 A.3d at 386. Accordingly, Section VI of DC-ADM 804's Policy Statement specifies:

> This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of [DOC].

DC-ADM 804, Policy Statement, at 1.

> In addition, this Court has ruled:
>
> > Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any [] constitutional rights. Prisoners do have a constitutional right to seek redress of their grievances from the government, but that right is the right of access to the courts, and this right is not compromised by the failure of the prison to address [an inmate's] grievances.
>
> *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (citations omitted), *aff'd*, 142 F.3d 430 (3d Cir. 1998).

*Samuels v. Walsh* (Pa. Cmwlth. No. 318 C.D. 2014, filed Nov. 17, 2014),[21] slip op. at 11; *see also Casiano v. Mail Inspector #5* (Pa. Cmwlth. No. 1086 C.D. 2018, filed July 10, 2019), slip op. at 8 ("[T]here is no cause of action for the mishandling of an inmate's grievance."); *Owens v. Dep't of Corr.* (Pa. Cmwlth. No. 2624 C.D. 2015, filed Sept. 23, 2016), slip op. at 7 ("The providing of a prison grievance system does not confer constitutional rights on inmates concerning the handling of grievances

---

[21] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures, but not as binding precedent. *See* 210 Pa. Code § 69.414(a). The unreported decisions cited herein are cited for their persuasive value.

and no cause of action exists for improper investigation or handling of an inmate grievance.").

Moreover, Section 1.A.15 of DC-ADM 804 declares, in pertinent part: "Any concern disputing previous grievances, initial review responses, appeal decisions, or actions of staff members who rendered those decisions should be addressed through the appeal process outlined in [DC-ADM 804] Section 2 . . . ." DC-ADM 804 at 1-3 (emphasis omitted). Therefore, Keeling had the option of appealing to the Facility Manager pursuant to Section 2.A.1 of DC-ADM 804.[22] *See* DC-ADM 804 at 2-1. Thereafter, Section 2.B of DC-ADM 804 allowed Keeling to further appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA) for Final Review. *See* DC-ADM 804 at 2-4 - 2-9. Here, rather than appeal to the Facility Manager and then to the SOIGA for Final Review, Keeling filed the Petition in this Court.[23] This Court has held that "[i]f [an] inmate fails to complete each of these steps, he fails to exhaust his administrative remedies." *Kittrell v. Watson*, 88 A.3d 1091, 1095 (Pa. Cmwlth. 2014).

Although this Court does not countenance Fagan's rejection and/or disregard of Keeling's Grievances, precedent does not afford Keeling relief under the circumstances presented in the Petition. Because the Petition fails to plead a clear right in Keeling, a corresponding duty in Fagan, and lack of an adequate or appropriate remedy, Keeling failed to state a valid mandamus claim against Fagan under DC-ADM 804. *See Stodghill*. Accordingly, DOC's First Preliminary Objection is sustained as to Fagan.[24] Because Keeling withdrew his claims against

---

[22] Although such appeals must be filed within 15 days of the rejection, the Facility Manager has the authority to grant reasonable extensions on a case-by-case basis. *See* DC-ADM 804 at 2-1 - 2-2.

[23] This Court lacks appellate and original jurisdiction over inmate grievances. *See Weaver v. Pa. Dep't of Corr.*, 829 A.2d 750 (Pa. Cmwlth. 2003).

[24] Given this Court's disposition of the First Preliminary Objection, it does not reach DOC's other Preliminary Objections.

13

Newberry on the basis that she properly rejected the Health Grievance pursuant to DC-ADM 804, DOC's First Preliminary Objection is also sustained as to Newberry.

**Conclusion**

"[A]ccept[ing] as true all well-pleaded material allegations in the [Petition and the documents attached thereto], as well as all inferences reasonably deduced therefrom[,]" and resolving any doubt in favor of overruling the preliminary objection, as we must, because it does "*appear with certainty that . . .* [Keeling has failed to state a viable mandamus action against Newberry and Fagan]," *Torres*, 997 A.2d at 1245 (emphasis added), DOC's First Preliminary Objection filed on Newberry's and Fagan's behalf is sustained.

_____
ANNE E. COVEY, Judge

Senior Judge Leadbetter concurs in the result only.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael E. Keeling,          :
        Petitioner     :
                              :

v.             :

Mr. Fagan and Mrs. Newberry,  :
both Grievance Coordinator's for  :
Department of Corrections,    :   No. 166 M.D. 2021
        Respondents  :

## O R D E R

AND NOW, this 7th day of July, 2022, the first preliminary objection filed by Mr. Fagan and Mrs. Newberry is SUSTAINED, and Michael E. Keeling's pro se petition for review in the nature of a complaint in mandamus is DISMISSED.

_____
ANNE E. COVEY, Judge